877 P.2d 1355 (1994)
In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY APPROVED ON APRIL 6, 1994, FOR the PROPOSED INITIATED CONSTITUTIONAL AMENDMENT CONCERNING "FAIR FISHING", and Motion for Rehearing Denied on April 20, 1994.
Mike Hogue, Petitioner, and
David M. Bryans and Randolph L. Martinez, Respondents, and
Title Setting Board: Stephen K. ErkenBrack, Rebecca Lennahan, and Natalie Meyer, Respondents.
In the Matter of the TITLE, BALLOT TITLE, SUBMISSION CLAUSE, SUMMARY AND FISCAL IMPACT STATEMENT, FIXED APRIL 6, 1994, PERTAINING TO A PROPOSED CONSTITUTIONAL AMENDMENT TO the CONSTITUTION OF the STATE of Colorado, DENOMINATED BY the OFFICE OF the SECRETARY OF STATE of Colorado as "FAIR FISHING", and Motion for Rehearing Denied on April 20, 1994.
David M. Bryans and Randolph L. Martinez, Petitioners, and
Title Setting Board: Stephen K. ErkenBrack, Rebecca Lennahan, and Natalie Meyer, Respondents,
James M. Dieterich, David J. Nowak, Frederick W. Klann, Francis Lynn Vader, Marija Bocovich Vader, Jerry D. Bates, Pauline R. Bates, Charles S. Leavell, Mike Hogue, William C. Hall, Don E. Wilson, Mark Adolph Schumacher, Charles F. Cliggett, John H. Parker, II, Cynthia Cooper Smock, Douglas MacArthur Stratman, Barbara Ambrose Stratman, Wallace Allen Jones, Joseph Grant Youmans, Wilma June Youmans, Edward David Howard, Richard Bailey Wilson, Alice Lorraine Wilson, Fred R. Field, William E. Guerrieri, Luwayne Anton Ruttum, Robert Gale Meldrum, Buford F. Rice, and James C. Hackstaff, Opponents-Respondents.
In the Matter of the TITLE, BALLOT TITLE, SUBMISSION CLAUSE, AND SUMMARY ADOPTED APRIL 20, 1994, BY the INITIATIVE TITLE SETTING BOARD PERTAINING TO A PROPOSED INITIATIVE ON "FAIR FISHING".
William C. Hall, Don E. Wilson, Mark Adolph Schumaker, Charles E. Cliggett, John H. Parker, II, Cynthia Cooper Smock, Douglas MacArthur Stratman, Barbara Ambrose Stratman, Wallace Allen Jones, Joseph Grant Youmans, Wilma June Youmans, Edward David Howard, Richard Bailey Wilson, Alice Lorraine Wilson, Fred R. Field, William E. Guerrieri, Luwayne Anton Ruttum, Robert Gale Meldrum, Buford F. Rice, and James C. Hackstaff, Petitioners, and
Randolph L. Martinez and David M. Bryans, Respondents, and
Title Setting Board: Natalie Meyer, Stephen K. ErkenBrack, and Rebecca Lennahan, Respondents.
In the Matter of the TITLE, BALLOT TITLE, SUBMISSION CLAUSE, AND SUMMARY ADOPTED APRIL 20, 1994, BY the TITLE BOARD PERTAINING TO A PROPOSED INITIATIVE ON "FAIR FISHING".
Francis Lynn Vader, Marija Bocovich Vader, Jerry D. Bates, Pauline R. Bates, and Charles S. Leavell, Petitioners, and
Randolph L. Martinez and David M. Bryans, Respondents, and
Title Setting Board: Natalie Meyer, Stephen K. ErkenBrack, and Rebecca Lennahan, Respondents.
Nos. 94SA163, 94SA164, 94SA166 and 94SA167.
Supreme Court of Colorado, En Banc.
July 5, 1994.
As Modified on Denial of Rehearing August 8, 1994.
*1358 Berry & Singer, Kent Singer, Denver, for Mike Hogue.
David M. Bryans, Westminster, for David M. Bryans and Randolph L. Martinez.
James M. Dieterich, pro se.
David J. Nowak, pro se.
Frederick W. Klann, pro se.
Brownstein Hyatt Farber & Strickland, P.C., Charles B. White, Mark J. Mathews, Denver, for Francis Lynn Vader, Marija Bocovich Vader, Jerry D. Bates, Pauline R. Bates and Charles S. Leavell.
Bratton & McClow, L. Richard Bratton, Gunnison, John R. Hill, Jr., Denver, for William C. Hall, Don E. Wilson, Mark Adolph Schumacher, Charles E. Cliggett, John H. Parker, II, Cynthia Cooper Smock, Douglas MacArthur Stratman, Barbara Ambrose Stratman, Wallace Allen Jones, Joseph Grant Youmans, Wilma June Youmans, Edward David Howard, Richard Bailey Wilson, Alice Lorraine Wilson, Fred R. Field, William E. Guerrieri, Luwayne Anton Ruttum, Robert Gale Meldrum and James C. Hackstaff.
Carlson, Hammon & Paddock, William A. Paddock, Melanie Kopperud Backes, K. Gwen Beacham, Denver, for Buford F. Rice.
Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., General Legal Services Div., Denver, for Title Setting Bd.
Justice ERICKSON delivered the Opinion of the Court.
Four separate original proceedings challenging the validity of the title, submission clause,[1] and summary set by the Initiative Title Setting Board (Board) for a proposed initiated amendment to the Colorado Constitution (Initiative) are before us for priority review.[2] The Initiative, generically and inaccurately referred to as the "Proposed Initiative on Fair Fishing," would amend article XVI of the Colorado Constitution by adding a new section 9, which would provide that state laws concerning criminal trespass shall not apply to stream beds of non-navigable fresh water streams when actually covered with flowing water.[3] Travel by motorized vehicle on such waters would remain prohibited.
Both proponents and opponents of the Initiative appear as parties in the four proceedings which we have consolidated for review in this opinion. The parties supporting the Initiative are Randolph L. Martinez and David M. Bryans (Case No. 94SA164) (proponents). The parties opposing the Initiative are Mike Hogue (Case No. 94SA163); William C. Hall, et al. (Case No. 94SA166); Francis Lynn Vader, et al. (Case No. 94SA167); (opponents). Both the proponents and opponents to the Initiative contend that the title, submission clause, and summary do not express the true meaning and intent of the Initiative. Because we hold that the title, submission clause, and summary reflect the true intent *1359 and meaning of the Initiative, we affirm the ruling of the Board.

I
Article V, section 1(2) of the Colorado Constitution reserves to the registered electors of Colorado the right to initiate legislation and constitutional amendments. The procedural statutes that prescribe the manner of exercising the right of initiative require the Board to fix a title, submission clause, and summary for every initiative. § 1-40-106, 1B C.R.S. (1993 Supp.); see also In re Proposed Tobacco Tax Amendment 1994, 872 P.2d 689 (Colo.1994) (describing the initiative process).
On April 6, 1994, in compliance with section 1-40-106, the Board fixed a title, submission clause, and summary for the proposed amendment:
Title
AN AMENDMENT TO THE COLORADO CONSTITUTION PROVIDING THAT IT IS NOT CRIMINAL TRESPASS TO BE ON THE WATER WITHIN AND THE STREAM BED OF ANY NONNAVIGABLE FRESH WATER STREAM WHEN THE STREAM BED IS ACTUALLY COVERED WITH FLOWING WATER, EXCEPT THAT NO PERSON IS AUTHORIZED TO TRAVEL UPON OR WITHIN ANY STREAM BED WHILE IN OR UPON ANY MOTOR POWERED VEHICLE.
Submission Clause
SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION PROVIDING THAT IT IS NOT CRIMINAL TRESPASS TO BE ON THE WATER WITHIN AND THE STREAM BED OF ANY NONNAVIGABLE FRESH WATER STREAM WHEN THE STREAM BED IS ACTUALLY COVERED WITH FLOWING WATER, EXCEPT THAT NO PERSON IS AUTHORIZED TO TRAVEL UPON OR WITHIN ANY STREAM BED WHILE IN OR UPON ANY MOTOR POWERED VEHICLE.
Summary
This measure would amend the Colorado Constitution to forbid any law that prohibits a criminal trespass if it includes as a part of the premises upon which the criminal trespass may be committed the water within and the stream bed of any nonnavigable fresh water stream when actually covered by flowing water. The measure does not authorize any person to travel upon or within any stream bed while traveling in or upon any motor powered vehicle.
If the courts were to hold this measure to be a "taking" of private property, the State could be obligated to pay the owners of the stream beds just compensation, and the fiscal impact upon the State could be substantial. There may be a reduction in the number of arrests and prosecutions for criminal trespass because the use of a stream or a stream bed would no longer be prosecuted as trespass, but the number of arrests and prosecutions for this type of activity is small and there thus would not be a measurable reduction in the workload of law enforcement and prosecution personnel.
In preparing the summary, the Board relied on the text of the proposed amendment, which in its entirety is shorter than some ballot titles. See, e.g., In re Proposed Initiated Constitutional Amendment Concerning Limited Gaming in Manitou Springs, Fairplay and in Airports, 826 P.2d 1241 (Colo. 1992) (hereinafter In re Gaming in Manitou Springs); In re Proposed Election Reform Amendment, 852 P.2d 28 (Colo.1993). The amendment states:
Article XVI of the Constitution of the State of Colorado is amended by THE ADDITION OF THE FOLLOWING NEW SECTION 9, to read:
No law of the State of Colorado prohibiting a criminal trespass shall include as a *1360 part of the premises upon which a criminal trespass may be committed the water within and the stream bed of any nonnavigable fresh water stream when actually covered with flowing water. Provided however, that nothing in this section shall authorize any person to travel upon or within any stream bed while in or upon any motor powered vehicle.
Section 1-40-107(1), 1B C.R.S. (1993 Supp.), permits an interested party to petition the Board for rehearing. Both the proponents and opponents of the Initiative filed motions for rehearing. On April 20, 1994, the Board held a hearing on the motions for rehearing and denied the motions. Subsequently, the parties petitioned for review by this court.

II
The purpose of the title setting process is to insure that both persons reviewing an initiative petition and the voters are fairly and succinctly advised of the import of the proposed initiative. In re Initiated Constitutional Amendment Concerning Limited Gaming in the City of Antonio (Limited Gaming IV), 873 P.2d 733, 739 (Colo.1994); In re Initiative on Education Tax Refund, 823 P.2d 1353, 1355 (Colo.1991). It is not necessary for the Board to describe every feature of a proposed amendment. In re Initiated Constitutional Amendment Concerning Limited Gaming in Burlington, 830 P.2d 1023, 1026 (Colo.1992). However, the Board has the responsibility of determining whether public confusion might be caused by misleading titles and must avoid titles which would create confusion and would not provide a general understanding of the effect of a "yes" or "no" vote. § 1-40-106(3)(b), 1B C.R.S. (1993 Supp.). Petition signers and voters should not be misled into supporting or opposing a proposition by reason of the words employed. Dye v. Baker, 143 Colo. 458, 460, 354 P.2d 498, 500 (1960).
Our duty in reviewing the actions of the Board is "to insure that the title, submission clause, and summary fairly reflect the proposed initiative so that petition signers and voters will not be misled into support for or against a proposition by reason of the words employed by the Board." In re Workers Comp. Initiative, 850 P.2d 144, 146 (Colo.1993). The principles which guide us in determining the validity of the objections made by both the proponents and opponents of the Initiative were well-stated in In re Gaming in Manitou Springs, 826 P.2d at 1245:
In reviewing the Board's action, we must not in any way concern ourselves with the merit or lack of merit of the proposed amendment, since that issue rests with the electorate. Bauch v. Anderson, 178 Colo. 308, 310, 497 P.2d 698, 699 (1972). We have emphasized in our prior decisions that all legitimate presumptions must be indulged in favor of the Board's action, and only in a clear case should its action be set aside as invalid. Id.; see also In the Matter of Increase of Taxes on Tobacco Products, 756 P.2d [995] at 998 [ (Colo.1988) ]; In the Matter of Title, Ballot Title and Submission Clause, and Summary Pertaining to Casino Gaming Initiative, 649 P.2d 303, 306 (Colo.1982). In short, so long as the title, the ballot title and submission clause, and the summary accurately reflect the central features of the initiated measure in a clear and concise manner, we will not interfere with the Board's choice of language.
See also In re Casino Gaming Initiative, 649 P.2d 303, 306 (Colo.1982) (describing the standard of review).

III

A. Title and Submission Clause
Opponents of the Initiative assert that the Board's use of the phrase "be on" the water in the title and submission clause creates confusion because the phrase is not in the text of the amendment and will mislead voters about the relationship between the amendment and the crime of trespass. In our view, the title and submission clause clearly inform the voter that under the initiated *1361 amendment, an individual who is within the confines of a flowing, nonnavigable, freshwater stream is not subject to prosecution for criminal trespass unless the individual is in a motor powered vehicle or enters on the landowner's property that is not in the flowing stream.
The opponents correctly note that the language in the ballot title and the submission clause is not identical to the relevant statutory definition of the acts constituting criminal trespass, i.e., trespass occurs when a person unlawfully enters or remains in or upon the premises of another. § 18-4-504(1), 8B C.R.S. (1993 Supp.). However, it is not the function of the Board to state the effect of an initiative on other constitutional and statutory provisions. In re Proposed Election Reform Amendment, 852 P.2d 28, 33 (Colo.1993). Therefore, our only inquiry is whether the phrase "it is not criminal trespass to be on the water" is misleading.
In the context of the electorate understanding the amendment, the phrase "it is not criminal trespass to be on the water" is sufficiently clear and is not misleading. The plain language of the phrase lets the reader know that the amendment addresses the crime of trespass in regards to individuals who are located in a water course. Specificity is added by the clarification that it is not trespass to be on the water within and the stream bed of a stream. In addition, the title and submission clause further clarify that "be on the water" requires that water be flowing in the stream. Although the phrase "be on the water" is somewhat formal and stilted, it is readily intelligible.
Although the inclusion of the statutory definition of trespassing may have resulted in a clearer understanding of the amendment and allowed for a more explicit interrelationship between the statute and the amendment, a title is not infirm because it is possible to set forth the relevant information in a better way. See In re Increase of Taxes on Tobacco Products Initiative, 756 P.2d 995, 998 (Colo.1988) (recognizing that the title, submission clause, and summary are not intended to fully educate the people on all aspects of the proposed law or constitutional amendment). Because the title and submission clause set forth the intent of the Initiative with sufficient clarity to apprise the electorate that the amendment would create an exception to the law of trespass for individuals who are occupying a flowing, freshwater, nonnavigable stream, we affirm the ruling of the Board upholding the title and submission clause.

B. Summary
Both the proponents and the opponents of the Initiative contend that the summary is misleading. We disagree.

1
The proponents contend that the sentence in the summary, "If the courts were to hold this measure to be a `taking' of private property, the state could be obligated to pay the owners of the stream beds just compensation, and the fiscal impact upon the State could be substantial" is unsupported by any evidence in the record and misleading. We disagree.
The proponents were first informed of the takings issue in a memorandum issued by the Legislative Council and Office of Legislative Legal Service which have a statutory duty to comment on the initiative. § 1-40-105(1), 1B C.R.S. (1993 Supp.). The language regarding public taking of private property was added after the Board heard evidence at the title setting hearing on April 6, 1994. During rehearing, Bryans, one of the proponents, acknowledged the fact that testimony had been offered on the issue of public taking of private property:
And we've heard a lot of testimony today, and we heard a lot of testimony on the 6th [of April] that this would beor if this measure were approved by the voters, then it would constitute a taking of private property without just compensation by the state.
Thus, there was evidence in the record that supports the Board's decision to alert the *1362 electorate to the possibility that the proposed amendment might result in the taking of private property and substantial demands by landowners for compensation for the taking of private property.
The reason for requiring a fiscal impact statement is to make certain that the fiscal implications of a proposed measure are given consideration and the electorate is fully informed. In re Initiative for an Amendment to Article XVI, Section 5, Colorado Constitution, Entitled "W.A.T.E.R.," 831 P.2d 1301, 1306 (Colo.1992) (hereinafter In re Title Pertaining to "W.A.T.E.R.,"). In this case, there is evidence in the record of a possible fiscal impact as a result of the interrelationship of the proposed amendment and the law regarding public taking of private property. The language the Board included in the summary is not misleading because it phrased as a conditional clause, "if the courts were to hold this measure to be a `taking'...." Thus, the summary alerts the electorate to an issue raised by the proposed amendment and informs the electorate that the fiscal impact is one possibility if the initiative becomes law. The decision to inform the electorate of a possible ramification of a proposed amendment is a proper exercise of the Board's discretion and because evidence of the issue exists in the record, we will not disturb the Board's decision on review. See id.

2
The opponents assert that the summary has several infirmities. The effect of the proposed amendment on the law of property and the law of criminal trespass is not disclosed. The opponents also point out that the application of the amendment to activities other than fishing is not disclosed and all streams in Colorado are affected and that fact is not disclosed. The opponents also assert that the fiscal impact statement is misleading. In our view, the opponents' arguments do not persuade us to invalidate the Board's actions.
The summary states that the proposed amendment would "forbid any law" that would make occupation of a flowing, nonnavigable stream a criminal trespass. This language provides sufficient notice to a voter or petition signer that the proposed amendment would effectuate a change in existing law by eliminating the possibility that occupying a flowing, nonnavigable, freshwater stream could be criminal trespass. Although detailed information regarding the state of the law and the effect of the proposed amendment on current law is not set forth in the summary, the Board is not required to state the effect that the measure will have on other constitutional or statutory provisions. In re Proposed Initiative on Surface Mining, 797 P.2d 1275, 1279 (Colo. 1990). Accordingly, we reject the contention that the Board is required to set forth the effect of the proposed amendment on the law of property and criminal trespass with more particularity.
The opponents also challenge the inclusion in the summary of the phrase "forbids any law." The opponents contend that this phrase could mislead the electorate because it implies the proposed amendment will invalidate the entire third-degree criminal trespass statute. The summary accurately reflects the amendment. The amendment states that "no law ... shall include...." The summary states that the measure would "forbid any law that prohibits...." Although it is possible to read the phrase "forbids any law" as requiring the abolition of third degree criminal trespass, we do not believe that the Board erred in failing to disclose this interpretation of the summary to the electorate. The Initiative closely tracks the language of the proposed amendment. It is not the function of the Board to determine the meaning of the language of an initiative. Spelts v. Klausing, 649 P.2d 303, 310 (Colo.1982). Nor is the function of the Board to disclose every possible interpretation of the language of the initiative. The phrase "forbid any law" is not misleading in context and therefore the Board did not err in including this phrase in the summary.
The opponents also maintain that the summary should explain that the proposed amendment applies to activities other than fishing. The summary does not state that the proposed amendment only affects piscatorial activities; in fact, fishing is only mentioned in the caption of this case and in *1363 the briefs where the amendment is referred to as "Proposed Initiative on `Fair Fishing.'" Any ambiguity about the activities that could be affected by the adoption of the amendment is clarified by the statement in the summary that criminal trespass would not occur when an individual is in the confines of a flowing, nonnavigable, freshwater stream. The affected "activities" are never defined; instead, the title, submission clause, and summary all define the affected interest as the elimination of criminal trespass liability for occupying a flowing, nonnavigable, freshwater stream. A variety of activities other than fishing would be permitted and decriminalized by the initiated amendment.
In isolation, the reference to "Fair Fishing" may be misleading, but reading the summary clarifies the intent of the proposed measure and that the scope of the amendment is defined in terms of being on a flowing stream, not piscatorial activity. Accordingly, we see no reason to require the Board to list a broad range of activities that could occur on the stream and not be subject to criminal liability. It is sufficient that the title, submission clause, and summary set forth the broad all-inclusive proposition that occupying a flowing, nonnavigable stream is not subject to criminal sanction.
Similarly, the opponents maintain that the Board should disclose the fact that "all streams in Colorado are affected." The summary defines the affected streams as "any nonnavigable fresh water stream when actually covered by flowing water." This specific definition can be applied to individual water courses, as well as the general system of water courses in Colorado, with relative ease. The Board's decision to provide a definition restricted by the terms "nonnavigable" "fresh water" and "flowing" does not make the summary misleading.
The opponents' final assertion is that the fiscal impact statement is erroneous because the amendment would increase the cost of law enforcement. The Board has no independent fact gathering ability. Here, the Board, pursuant to statute, sought the assistance of the Office of State Planning and Budgeting (OSPB) and the Department of Local Affairs (DLA). The DLA responded that it saw no direct fiscal impact on local governments. The OSPB could not estimate a fiscal impact but reported that the Division of Wildlife expressed some concern over the potential impact on its law enforcement personnel as a result of hunters using stream beds to gain access to private land. However, the OSPB could not estimate a fiscal impact on the governmental agency.
The purpose of fiscal impact is to inform the electorate of the fiscal implications of the proposed measure. In re Title, Pertaining to "W.A.T.E.R.," 831 P.2d at 1306. Because of the inherent uncertainties in the text of the amendment, the fiscal impact could not reasonably be determined from the materials submitted to the Board thereby making a definitive fiscal impact statement impossible. In re Proposed Initiated Constitutional Amendment Concerning Unsafe Work Place Environment, 830 P.2d 1031, 1035 (Colo. 1992).
In our view, the testimony offered at the hearing does not require a different result. The choice of language by the Board was judicious and well within its authority.

IV
We conclude that the title, submission clause, and summary set by the Board is not misleading and fairly reflects the intent of the Initiative. Accordingly, we affirm the ruling of the Board.
NOTES
[1] For clarity, this opinion will refer to the ballot title and submission clause as the "submission clause." See § 1-40-102(2), 1B C.R.S. (1993 Supp.) (defining "ballot title" as the language that is printed on the ballot which is comprised of the submission clause and the title).
[2] This review was initiated pursuant to § 1-40-107(2), 1B C.R.S. (1993 Supp.).
[3] "Fair fishing" does not appear in the title, ballot title and submission clause, or summary. The text of the initiated amendment places no limitation on the use of property underlying a flowing nonnavigable stream other than to prohibit travel by motor-powered vehicle.