In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY ADOPTED NOVEMBER 1, 1995, BY THE TITLE BOARD PERTAINING TO A PROPOSED INITIATIVE ON "TRESPASS–STREAMS WITH FLOWING WATER."

Elizabeth T. FEAZEL, Jeanne Marie Foster, Regas K. Halandras, William C. Hall, Michael Leo Hogue, Robert Goetz Hohnholz, and Gertrude E. Young, Petitioners,

v.

Randolph L. MARTINEZ and David M. Bryans, Proponents/Respondents,

and

Victoria Buckley, Stephen Erkenbrack, and Rebecca Lennahan, Title Setting Board.

No. 95SA364.

Supreme Court of Colorado, En Banc.

Jan. 22, 1996.

Brownstein Hyatt Farber & Strickland, P.C., Charles B. White, Joshua J. Widoff, Denver, for Petitioners.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Maurice G. Knaizer, Deputy Attorney General, Denver, for Title Board.

David M. Bryans, Westminster, for Respondents.

Justice KIRSHBAUM delivered the Opinion of the Court.

Petitioners Elizabeth T. Feazel, Jeanne Marie Foster, Regas K. Halandras, William C. Hall, Michael Leo Hogue, Robert Goetz Hohnholz, and Gertrude E. Young (the objectors) have filed a petition pursuant to section

1–40–107(2), 1B C.R.S. (1995 Supp.), seeking review of the action of the Initiative Title Setting Board (the Board) in setting the title, ballot title and submission clause, and summary for an amendment to article XVI of the Colorado Constitution (the Initiative) proposed by respondents Randolph L. Martinez and David M. Bryans (the proponents).[1] The Initiative, captioned "Proposed Initiative on 'Trespass–Streams with Flowing Water,'" proposes the addition of a section to the Colorado Constitution abrogating criminal prosecution for trespass upon the water within and the stream bed of any nonnavigable fresh water stream when such stream is covered with flowing water. The Initiative expressly prohibits travel upon or within any stream bed while in or upon a motor powered vehicle. The text of the Initiative is attached hereto as APPENDIX A. The texts of the title, ballot title and submission clause, and summary prepared by the Board, as well as the text of the caption, are attached hereto as APPENDIX B.

The objectors argue that the caption, title, and ballot title and submission clause are misleading and fail to correctly and fairly express the true intent and meaning of the Initiative. In addition, they contend that the fiscal impact statement contained in the summary is incomplete. We approve the action of the Board.

## I

On October 18, 1995, the Board set a title, ballot title and submission clause, and summary for the Initiative. On October 25, 1995, the objectors filed a motion for rehearing pursuant to section 1–40–107(1), 1B C.R.S. (1995 Supp.), alleging that the caption, title and ballot title and submission clause did not fully express the true intent and meaning of the Initiative. The objectors also contended that the summary did not reflect the true intent and meaning of the Initiative because the fiscal impact statement contained therein was incomplete and because the summary as written by the Board inappropriately charac-

terized the scope of the Initiative as relating only to trout streams. The Board granted the objectors' motion and on November 1, 1995, after the rehearing, the Board amended only the summary by adding two sentences concerning the impact of the Initiative on other types of streams.

## II

■ In order to aid electors in the exercise of their right to initiate constitutional amendments, the Board has a duty to designate and fix a title, a ballot title and submission clause, and a summary for initiated petitions before they are signed by electors. § 1–40–106(3), 1B C.R.S. (1995 Supp.); *In re Proposed Initiative on Sch. Pilot Program,* 874 P.2d 1066, 1069 (Colo.1994); *see* Colo. Const. art. V, § 1. The purpose of the title setting process is to ensure that persons reviewing the initiative petition and voters are fairly advised of the import of the proposed amendment. *In re Proposed Initiative on Sch. Pilot Program,* 874 P.2d at 1070.

■ The scope of our review of action taken by the Board is limited to ensuring that "the title, ballot title and submission clause, and summary fairly reflect the proposed initiative so that petition signers will not be misled into support for or against a proposition by reason of the words employed by the Board." *Id.* at 1070. In conducting such review we will engage in all legitimate presumptions in favor of the propriety of the Board's action. *In re Proposed Petition for an Amendment to the Constitution of the State of Colorado Adding Section 2 to Article VII (Petition Procedures),* 900 P.2d 104, 108 (Colo.1995).

## III

The objectors contend that the language of the caption, title, and ballot title and submission clause does not correctly and fairly express the true intent and meaning of the

---

1. Prior to filing the Initiative, the proponents filed an identical measure with the Colorado Secretary of State. We ultimately determined that the title, ballot title and submission clause, and summary set by the Board were not mislead-

ing and reflected the true intent and meaning of the measure. *In re Proposed Initiated Constitutional Amendment Concerning "Fair Fishing",* 877 P.2d 1355 (Colo.1994) (hereafter *"In re Fair Fishing"*).

Initiative and may therefore mislead voters. We disagree.

■ The title and the ballot title and submission clause of a proposed constitutional amendment must fairly express the true intent and meaning of that amendment. § 1–40–106(3)(b), 1B C.R.S. (1995 Supp.); *In re Proposed Petition for an Amendment to the Constitution of the State of Colorado Adding Section 2 to Article VII (Petition Procedures)*, 900 P.2d at 108. The title must consist of a brief statement accurately reflecting the central features of the proposed measure. *In re Proposed Petition on Campaign and Political Fin.*, 877 P.2d 311, 313 (Colo.1994). The title and ballot title and submission clause must "unambiguously state the principle of the provision sought to be added, amended, or repealed." § 1–40–106(3)(b), 1B C.R.S. (1995 Supp.). In setting a title, the Board is required to consider "the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a 'yes' or 'no' vote will be unclear." *Id.; In re Proposed Initiated Constitutional Amendment Concerning Limited Gaming in the City of Antonito*, 873 P.2d 733, 739 (Colo.1994). The language employed by the Board will be rejected only if such language is misleading, inaccurate, or fails to reflect the central features of the proposed measure. *In re Proposed Initiated Constitutional Amendment Concerning Limited Gaming in the City of Antonito*, 873 P.2d at 739–40. The title set by the Board should be invalidated only in a clear case. *In re Proposed Tobacco Tax Amendment 1994*, 872 P.2d 689, 694 (Colo. 1994).

## A

The objectors contend that the words "Trespass–Streams with Flowing Water" contained in the caption erroneously imply that the Initiative relates only to conduct occurring on the surface of flowing water.[2] In response, the Board argues that this court has jurisdiction only to review the title, ballot title and submission clause and summary and may not review the caption because the caption is set by the Secretary of State (the Secretary), not by the Board, and because the Board did not take any action concerning the accuracy and completeness of the caption. The proponents argue only that the caption is not misleading.

As a preliminary matter, we note that the Board has supplied this court with no statute, regulation, rule, or other authority in support of the proposition that this court may not review the caption created by the Secretary.[3] The document prepared and issued by the Board contains the caption as well as the title, the ballot title and submission clause, and the summary. *See* APPENDIX B. Thus, the Board has in fact incorporated the language of the caption in its own product.

■ In reviewing the Board's action we must determine whether language adopted by the Board is misleading, inaccurate, or fails to reflect the central features of the proposed measure. *In re Proposed Petition on Campaign and Political Fin.*, 877 P.2d at 313. While the statutory definitions of "title," "ballot title," and "submission clause" do not refer to a "caption," [4] to the extent that a

2. The objectors suggest that this court should instruct the Board to amend the caption to read "Trespass–Streams and Stream Beds." This suggestion is included in a document submitted by the objectors entitled "Proposed Changes to Titles and Summary." It is not the function of this court to rewrite a proposed measure or its titles. *In re Proposed Election Reform Amendment*, 852 P.2d 28, 35 (Colo.1993); *In re Increase of Taxes on Tobacco Products Initiative Adopted on March 2, 1988*, 756 P.2d 995, 999 (Colo.1988); *Say v. Baker*, 137 Colo. 155, 160, 322 P.2d 317, 319 (1958).

3. The Board attached to the brief it filed in this court a document prepared by the Secretary entitled "Agenda." The Agenda lists, by caption, four measures to be heard by the Board at its November 1, 1995, meeting, including the Initiative. The proponents do not object to this document and do not question the Board's statement that the caption was prepared by the Secretary.

4. Section 1–40–102(10), 1B C.R.S. (1995 Supp.), defines "title" as "a brief statement that fairly and accurately represents the true intent and meaning of the proposed text of the initiative." Section 1–40–102(2), 1B C.R.S. (1995 Supp.), defines "ballot title" as "the language which is printed on the ballot which is comprised of the submission clause and the title." Section 1–40–102(8), 1B C.R.S. (1995 Supp.), defines "submis-

caption may render a title or ballot title and submission clause misleading as a whole, review by this court is warranted. *See In re Fair Fishing*, 877 P.2d at 1363 (addressing phrase contained in caption). A contrary conclusion would require this court to ignore a caption entitled "Proposed Initiative on Hunting" affixed to a proposed amendment to provisions of Colorado's Constitution dealing with acquisition of water rights.

■ We reject the objectors' contention that the caption is misleading. To the extent the phrase is limiting, the texts of the title, ballot title and submission clause, and summary establish that the Initiative pertains to water within and stream beds of all nonnavigable freshwater streams when covered with flowing water. *See In re Fair Fishing*, 877 P.2d at 1363 (phrase in caption misleading when read in isolation but scope and intent of measure clarified by summary).

### B

The title and ballot title and submission clause contain the following language: "AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING CRIMINAL TRESPASS ON THE NONNAVIGABLE WATERS OF THE STATE, AND, IN CONNECTION THEREWITH, PROVIDING THAT IT IS NOT CRIMINAL TRESPASS TO BE ON THE WATER WITHIN AND THE STREAM BED OF ANY ... STREAM...." The objectors contend that the phrases "concerning criminal trespass on the nonnavigable waters of the state," "in connection therewith" and "be on the water" convey the impression that the Initiative ad-

dresses only conduct that occurs on the surface of water and therefore fails to reflect the intent of the Initiative.

The introductory phrase "concerning criminal trespass on the nonnavigable waters of the state," while not comprehensive, is accurate. To the extent this language suggests that the Initiative refers only to activity upon the surface of nonnavigable waters, the phrases "on the water within" and "the stream bed of" appearing in the next clause of the subject sentences adequately correct any such suggestion. The phrase "in connection therewith" is more superfluous than confusing.

■ With respect to the objectors' argument that the phrase "be on the water within and the stream bed of any nonnavigable fresh water stream" is misleading, it must be observed that we considered a similar argument in *In re Fair Fishing*, 877 P.2d 1355 (Colo.1994). The title and ballot title and submission clause set by the Board in that case were substantially similar to the title and ballot title and submission clause prepared by the Board in this case.[5] The objectors argued that the phrase "be on the water" should not have been adopted by the Board because the phrase was not part of the measure and would mislead voters about the relationship between the proposed amendment and the crime of trespass. *In re Fair Fishing*, 877 P.2d at 1361. We rejected this argument, concluding that the language adopted by the Board informed potential voters that the measure addressed the crime of trespass with regard to individuals generally

sion clause" as "the language which is attached to the title to form a question which can be answered by 'yes' or 'no.'"

**5.** The title reviewed in *In re Fair Fishing* contained the following language:
AN AMENDMENT TO THE COLORADO CONSTITUTION PROVIDING THAT IT IS NOT CRIMINAL TRESPASS TO BE ON THE WATER WITHIN AND THE STREAM BED OF ANY NONNAVIGABLE FRESH WATER STREAM WHEN THE STREAM BED IS ACTUALLY COVERED WITH FLOWING WATER, EXCEPT THAT NO PERSON IS AUTHORIZED TO TRAVEL UPON OR WITHIN ANY STREAM BED WHILE IN OR UPON ANY MOTOR POWERED VEHICLE.

The ballot title and submission clause reviewed in *In re Fair Fishing* contained the following language:
SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION PROVIDING THAT IT IS NOT CRIMINAL TRESPASS TO BE ON THE WATER WITHIN AND THE STREAM BED OF ANY NONNAVIGABLE FRESH WATER STREAM WHEN THE STREAM BED IS ACTUALLY COVERED WITH FLOWING WATER, EXCEPT THAT NO PERSON IS AUTHORIZED TO TRAVEL UPON OR WITHIN ANY STREAM BED WHILE IN OR UPON ANY MOTOR POWERED VEHICLE.

"in a water course" and that the language of the titles as a whole clarified the phrase by stating that it is not trespass to be on the water within and the stream bed of any nonnavigable stream when covered with flowing water. *Id.*

For reasons similar to those underlying our decision in *In re Fair Fishing*, we conclude that the phrase "be on the water" adopted by the Board in this case is not misleading. Furthermore, the phrase "be on the water within and the stream bed of" any stream is substantially similar to the following language used in the text of the Initiative itself: "No law ... prohibiting a criminal trespass shall include as part of the premises upon which a criminal trespass may be committed the water within and the stream bed of any ... stream...." In other words, the Initiative provides that a person may not commit criminal trespass "upon ... the water within or the stream bed of" any stream. Instead of constructing the titles to contain the language "upon ... the water," the Board adopted the phrase "be on the water." While alternative language could have been employed, we will not reverse the action of the Board simply because a better title could have been drafted. *See In re Proposed Initiated Constitutional Amendment "Concerning Suits Against Nongovernmental Employers Who Knowingly and Recklessly Maintain an Unsafe Work Environment",* 898 P.2d 1071, 1075 (Colo.1995). In our view, the title and the ballot title and submission clause when read as a whole properly reflect the intent of the Initiative and do not convey the impression that the Initiative applies only to conduct on the surface of nonnavigable waters. We therefore uphold the Board's action with respect to the title and ballot title and submission clause.

## IV

The objectors also contend that the fiscal information contained in the summary is incomplete because it does not reflect the risk of increased government costs to monitor and maintain stream areas previously inaccessible to the public. In addition, the objectors contend that the fiscal statement does not inform voters of the cost of defending equal protection lawsuits likely to result from passage of the measure. We again reject the objectors' contentions.

When setting the title and ballot title and submission clause, the Board must also prepare an impartial summary of the proposed amendment, one not likely to create prejudice either for or against the proposal. § 1–40–106(3)(a), 1B C.R.S. (1995 Supp.). The summary must ordinarily include a fiscal impact statement in order to inform the electorate of the fiscal implications of the proposal. *In re Petition on Sch. Fin.,* 875 P.2d 207, 211 (Colo.1994). The Board is vested with discretion regarding how to best describe the fiscal impact without creating prejudice for or against the proposal. *Id.* Explanation of the fiscal impact of a measure is not required when such impact cannot be determined from materials submitted to the Board due to uncertainties or variables inherent in the particular issue. *In re Proposed Initiative Under the Designation "Tax Reform",* 797 P.2d 1283, 1291 (Colo.1990). If the Board has sufficient information to assess the fiscal impact of only certain provisions, it must provide fiscal information with regard to those provisions in isolation and should state which provisions have indeterminate fiscal impacts. *In re Proposed Election Reform Amendment,* 852 P.2d at 37.

Pursuant to section 1–40–106(3)(a), 1B C.R.S. (1995 Supp.), the Board requested assistance in assessing the fiscal impact of the Initiative from the Office of State Planning and Budgeting (the OSPB) and the Department of Local Affairs (the DLA). The OSPB in turn requested information from other agencies and ultimately sent a letter to the Secretary of State expressing several concerns regarding the effect of decriminalizing trespass on the water within and the stream beds of nonnavigable streams when covered with flowing water.

In its letter the OSPB refers to the following concerns: 250 miles of high quality fishing habitat would become accessible; increased wading in stream beds would eventually destroy trout spawning beds, leading to an indeterminate increase in cost to the Division of Wildlife in order to expand its

hatchery program; additional complaints of unlicensed fishing would consume wildlife officer time; potential for "takings" litigation would result in related compensation costs in an indeterminate amount; and fencing restrictions or increased vandalism to fences constructed across stream beds could result in strayed or missing livestock and have an indeterminate fiscal impact. The OSPB letter concluded that while the Initiative could have a fiscal impact, such impact was indeterminate.

The DLA also submitted a letter to the Secretary of State describing the following findings with regard to the fiscal impact of the Initiative: the Initiative would result in increased calls for service to sheriff departments by landowners reporting trespass; lead to more search and rescue missions of individuals fishing in streams; increase hostile encounters between landowners and persons who fish; increase opportunities for burglars and vandals to gain access to private homes along streams; and decrease value of residential and commercial recreation properties by opening formerly private areas of streams to public use and cause a loss of property tax revenue to county governments. The DLA concluded that while the extent of the fiscal impact was indeterminate, it could be substantial.

The summary prepared by the Board reflects almost all of the fiscal concerns expressed by the OSPB and by the DLA. *See, e.g., In re Proposed Initiative for an Amendment to Article XVI, Section 5, Colorado Constitution, Entitled "W.A.T.E.R.",* 831 P.2d 1301, 1306 (Colo. 1992) (determination of fiscal impact based in part upon OSPB and DLA findings); *In re Proposed Initiative Under the Designation "Tax Reform",* 797 P.2d 1283, 1291 (Colo. 1990) (fiscal impact conclusions reached by Board through reliance on OSPB data). At the hearing before the Board, the objectors introduced evidence in support of their contentions that the Initiative would require substantial governmental expenditures to monitor and maintain stream areas where landowners had previously imposed restrictions to protect water treatment, storage and diversion facilities and sensitive ecosystems; that governmental entities would face increased costs as a result of potential liability to persons traveling on streams or stream beds previously inaccessible to the public;[6] and that the state would face costs of defending equal protection lawsuits that could result from the Initiative.[7] However, it is the prerogative of the Board to determine the fiscal impact of the measure based on reports and statements submitted to it. *See In re Proposed Initiative for an Amendment to Article XVI, Section 5, Colorado Constitution, Entitled "W.A.T.E.R.",* 831 P.2d at 1306–07; *In re Fair Fishing,* 877 P.2d at 1363 (Board has no independent fact-gathering ability; choice of language was within Board's authority and testimony offered at hearing did not require different result). In order for the Board to have included a statement expressing the fiscal impact of potential equal protection lawsuits on the state, the Board may have been required to speculate as to the effect of the equal protection clauses of the United States and Colorado Constitutions on the Initiative. Such speculation is not required of the Board. *See, e.g., In re Proposed Election Reform Amendment,* 852 P.2d at 33 (Board not required to state effect of Initiative on other constitutional provisions). The fiscal impact statement prepared by the Board is supported by the evidence before the Board, and the Board's decision to omit reference to potential government expenditures related to maintaining and monitoring previously inaccessible stream areas as well as to the defense of equal protection

---

6. The Board argues that because § 24–10–106(1)(e), 10B C.R.S. (1988), of the Governmental Immunity Act protects the state from liability to persons travelling in streams or stream beds, it was not required to address this fiscal question in the fiscal statement. Because this court may not interpret a proposed measure or speculate as to its future application if adopted, we do not address this issue. *See In re Proposed Initiative on Water Rights,* 877 P.2d 321, 327 (Colo.1994).

7. The objectors argue that the Initiative would violate equal protection guarantees by preventing owners of land through which nonnavigable streams flow from calling upon law enforcement officials to arrest and prosecute intruders onto their property, thus placing a burden on those landowners which is not shared by owners of non-riparian real property.

lawsuits does not render the fiscal impact statement misleading or inaccurate under the circumstances.

## V

For the foregoing reasons, we affirm the action of the Board.

MULLARKEY, J., concurs and dissents, and SCOTT, J., joins in the concurrence and dissent.

KOURLIS, J., does not participate.

## APPENDIX A

Article XVI of the Constitution of the State of Colorado is amended BY THE ADDITION OF THE FOLLOWING NEW SECTION 9, to read:

No law of the State of Colorado prohibiting a criminal trespass shall include as a part of the premises upon which a criminal trespass may be committed the water within and the stream bed of any nonnavigable fresh water stream when actually covered with flowing water. Provided however, that nothing in this section shall authorize any person to travel upon or within any stream bed while in or upon any motor powered vehicle.

## APPENDIX B

### Proposed Initiative on "Trespass–Streams with Flowing Water"

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING CRIMINAL TRESPASS ON THE NONNAVIGABLE WATERS OF THE STATE, AND, IN CONNECTION THEREWITH, PROVIDING THAT IT IS NOT CRIMINAL TRESPASS TO BE ON THE WATER WITHIN AND THE STREAM BED OF ANY NONNAVIGABLE FRESH WATER STREAM WHEN THE STREAM BED IS ACTUALLY COVERED WITH FLOWING WATER, BUT PROVIDING THAT NO PERSON IS AUTHORIZED BY THIS PROVISION TO TRAVEL UPON OR WITHIN ANY STREAM BED WHILE IN OR UPON ANY MOTOR POWERED VEHICLE.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING CRIMINAL TRESPASS ON THE NONNAVIGABLE WATERS OF THE STATE, AND, IN CONNECTION THEREWITH, PROVIDING THAT IT IS NOT CRIMINAL TRESPASS TO BE ON THE WATER WITHIN AND THE STREAM BED OF ANY NONNAVIGABLE FRESH WATER STREAM WHEN THE STREAM BED IS ACTUALLY COVERED WITH FLOWING WATER, BUT PROVIDING THAT NO PERSON IS AUTHORIZED BY THIS PROVISION TO TRAVEL UPON OR WITHIN ANY STREAM BED WHILE IN OR UPON ANY MOTOR POWERED VEHICLE?

The summary as prepared by the Board is as follows:

This measure would amend the Colorado Constitution to provide that it is not criminal trespass to be on the water within and the stream bed of any nonnavigable fresh water stream when the stream bed is actually covered with flowing water. The measure does not authorize any person to travel upon or within any stream bed while traveling in or upon any motor powered vehicle.

The beds of such streams in Colorado are owned by the owners of the adjoining lands. The United States and Colorado constitutions prohibit the taking of property without just compensation. If courts were to hold this measure to be a taking of private property, the state of Colorado would be obligated to pay the owners of the stream beds just compensation, and the fiscal impact on the state could be substantial. Challenges to the measure as a taking without just compensation would be defended by the Attorney General. The costs of this defense could have a substantial fiscal impact on the state.

The effect of the measure would be to allow access on streams that are not currently open to the public. Of the 4,600 miles of trout streams in Colorado that are on private

land, 250 miles are high quality fishing habitat that are not currently open to the public. Other streams in Colorado would also be affected by the Initiative, and access would be allowed for any purpose including hunting. Unlimited public access to streams might reduce incentives for property owners to continue private fish, duck, and other wildlife habitat improvement. The measure may lead to some destruction of trout spawning beds because of increased wading in stream beds by anglers. If the state increases the hatchery program to maintain successful fishing experiences for anglers, this could cause an indeterminate fiscal impact to the state. The measure also may result in the increased costs for the Department of Agriculture because of an increased number of stray livestock that have escaped through fence openings that exist either because of possible restrictions on the placing of fences across stream beds or because of vandalism by persons who may cut fences that cross stream beds.

The measure may cause a significant but indeterminate fiscal impact on the county governments in the state. The measure may create an increase in the number of criminal trespass situations that are reported, with a resulting increase in the number of calls to sheriff's departments. Further impacts may arise from an increase in the number of search and rescue missions conducted because of individuals traveling in hazardous waters; an increase in the number of conflicts arising between landowners and persons fishing in streams; and an increase in incidents of burglary and vandalism to homes located on stream banks or near streams. Further, it is possible that the values of residential and commercial recreation properties in certain counties will be negatively affected because of the loss of privacy and isolation when stream access is allowed, thereby resulting in a reduction in property tax revenues for these counties.

Justice MULLARKEY concurring in part and dissenting in part:

The majority affirms the action of the Initiative Title Setting Board (the Title Board) in setting the title, ballot title and submission clause, and summary for an amendment to Article XVI of the Colorado Constitution captioned "Proposed Initiative on 'Trespass–Streams with Flowing Water'" (the Initiative). The majority also addresses and rejects the petitioners' argument that the words "Trespass–Streams with Flowing Water" contained in the caption are misleading. I agree with the majority's analysis and conclusions regarding the title, ballot title and submission clause, and summary. However, I disagree with the majority that "to the extent that a caption may render a title or ballot title and submission clause misleading as a whole, review by this court is warranted." Maj. op. at ——. Accordingly, I respectfully dissent from that part of the majority's opinion. The caption has no official status and is not subject to our review.

The majority relies on our decision in *In re Proposed Initiated Constitutional Amendment Concerning "Fair Fishing"*, 877 P.2d 1355 (Colo.1994) (*In re "Fair Fishing"*), to extend our review over captions. In *In re "Fair Fishing"*, the opponents contended that the summary of the proposed amendment was misleading because it failed to state that the proposed amendment applied to activities other than fishing. In rejecting this argument, we explained that "in fact, fishing is only mentioned in the caption of this case and in the briefs where the amendment is referred to as 'Proposed Initiative on "Fair Fishing."'" *Id.* at 1362–63. We also explained that while the statement "Fair Fishing" might be misleading in isolation, the summary fairly clarified the scope of the proposed amendment. *Id.* at 1363. I do not construe this case, as does the majority, to stand for the broad proposition that we ought to review captions as we do titles, ballot titles and submission clauses, and summaries.

Captions generally are used by the individuals involved in the ballot process, *i.e.*, the Title Board members, the Secretary of State, and the proposed measure's proponents and opponents, as shorthand to keep track of proposed measures without resorting to what are often cumbersome formal titles. Captions have no official status. As noted by the majority, section 1–40–102, 1B C.R.S. (1995 Supp.), defines "title," "ballot title," and

"submission clause." Maj. op. at 24 n. 4. Notably, section 1–40–102 does not define "caption." Nor does "caption," or a word of comparable meaning such as "heading," appear elsewhere in the statutory scheme. For example, section 1–40–106, 1B C.R.S. (1995 Supp.), requires the Title Board to prepare "a clear, concise summary of the proposed law or constitutional amendment," 1–40–106(3)(a), and, in setting a title, to "consider the public confusion that might be caused by misleading titles," 1–40–106(3)(b). Since section 1–40–106 does not require the Title Board to prepare a caption, it cannot require that captions be prepared in a specific manner. Our review is likewise circumscribed.

Thus, I would hold that a caption is not reviewable by this court unless it is incorporated into a title, ballot title and submission clause, or summary. Captions as such are not reviewable and to hold otherwise serves no purpose except to add yet another weapon to the arsenal of those who wish to attack a proposed initiative on procedural grounds.

For the foregoing reasons, I respectfully dissent.

SCOTT, J., joins in this concurrence and dissent.