IN THE MATTER OF THE TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1999–2000 NO. 215 (Prohibiting Certain Open Pit Mining),

Ken Kluksdahl, Amy Meketi, Stuart Sanderson and Colorado Mining Association, Petitioners,

v.

Colin James Henderson and Ignacio Rodriguez, Respondents,

and

William Hobbs, Alan J. Gilbert, and Charles W. Pike, Title Setting Board.

No. 00SA65.

Supreme Court of Colorado, En Banc.

May 1, 2000.

Hale, Hackstaff, Tymkovich & Erkenbrack, L.L.P., Timothy M. Tymkovich, Richard Daily, Denver, Colorado, Attorneys for Petitioners Stuart Sanderson and Colorado Mining Association.

Isaacson, Rosenbaum, Woods & Levy, P.C., Mark G. Grueskin, Edward T. Ramey, Blain D. Myhre, Denver, Colorado, Attorneys for Petitioners Ken Kluksdahl and Amy Meketi.

Susan R. Burch, Denver, Colorado, Attorney for Respondents Colin James Henderson and Ignacio Rodriguez.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Alan J. Gilbert, Solicitor General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, Colorado, Attorneys for Title Board.

Chief Justice MULLARKEY delivered the Opinion of the Court.

Joint petitioners Ken Kluksdahl and Amy Meketi and joint petitioners Stuart Sanderson and Colorado Mining Association (collectively "Objectors") challenge the actions of the title setting board ("Title Board") in setting the title, ballot title and submission clause, and summary for the proposed initiative designated 1999–2000 No. 215 ("Initiative No. 215"). We have jurisdiction over this original proceeding under section 1–40–107, 1 C.R.S. (1999).

## I.

Respondents Colin James Henderson and Ignacio Rodriguez (collectively "Proponents") submitted Initiative No. 215 to the Title Board for the purpose of setting a title, ballot title and submission clause (collectively "titles"), and summary. The titles, summary, and text of Initiative No. 215 are appended to this opinion. The Title Board initially set the titles and summary for Initiative No. 215 on February 23, 2000. Motions for rehearing were filed by the Proponents and by the Objectors.

At a rehearing on March 1, 2000, the Title Board rejected some of the Objectors' challenges to the titles and summary and accept-

ed others. The Title Board then reset the titles and summary. This original proceeding followed.

## II.

We first dispose of the Proponents' and Title Board's argument that Colorado Mining Association ("CMA") lacks standing to challenge the titles and summary for Initiative No. 215. CMA and Sanderson jointly petitioned the Title Board for a rehearing on Initiative No. 215. Likewise, CMA and Sanderson jointly filed a brief with this court. In neither the petition for rehearing nor the brief to this court has counsel for CMA and Sanderson set forth arguments made solely on behalf of CMA.

■ Sanderson, as a registered elector in Colorado, clearly has standing to challenge the Title Board's actions on Initiative No. 215. *See* § 1–40–107(1). Because his arguments are identical to those of CMA, we decline to address CMA's standing.

## III.

■ We next address the Objectors' arguments that the Title Board erred in setting the titles for Initiative No. 215. The titles to a proposed initiative must "unambiguously state the principle of the provision sought to be added, amended, or repealed." § 1–40–106(3)(b), 1 C.R.S. (1999). The purpose of our limited review of the Title Board's action is to ensure that the titles and summary fairly reflect Initiative No. 215 so that voters will not be misled to vote for or against the proposed initiative merely by virtue of the particular words employed by the Title Board. *See In re Proposed Initiative on "Trespass–Streams with Flowing Water"*, 910 P.2d 21, 23 (Colo.1996). We will reject the language employed by the Title Board only if it is misleading, inaccurate, or fails to reflect the central features of the proposed measure. *See id.* at 24.

## A.

■ The Objectors assert that the titles imply that Initiative No. 215 would affect several mines in the state. According to the Objectors, however, Initiative No. 215 actually would affect only the Cresson mine, which is operated by the Cripple Creek & Victor Gold Mining Company and located in Teller County, Colorado. Thus, argue the Objectors, the titles are misleading.

On its face, the language of Initiative No. 215 applies to all open mines that use cyanide to leach gold and silver from ore. Thus far, the Cresson mine is the only mine in Colorado that has been identified as falling under the provisions of Initiative No. 215. Nevertheless, our review of the record indicates that other mines that would be affected by Initiative No. 215 may exist in the state. Additionally, the provisions of Initiative No. 215 are not limited to mines currently operating in Colorado, but also would apply to mines created after passage of the initiative. Finally, the summary for Initiative No. 215 adequately expresses the Title Board's understanding that Initiative No. 215 would affect only one *major* mining operation in the state. Accordingly, we reject the Objectors' argument that the titles are misleading because they do not state that Initiative No. 215 would affect only the Cresson mine.

## B.

■ The Objectors argue that the term "open mining" in the titles is misleading to voters. To prove that "open mining" is misleading, the Objectors polled several hundred registered voters. According to the Objectors, a significant percentage of voters polled erroneously understood "open mining" to mean "mining without restrictions," a mine "open to the public," "starting up a mine," and "large open pit mining."

We find that the Title Board did not err by finding the term "open mining" sufficiently clear. First, the term "open mining" is defined by statute to mean "the mining of minerals by removing the overburden lying above such deposits and mining directly from the deposits thereby exposed. The term includes mining directly from such deposits where there is no overburden. The term includes but is not limited to such practices as open cut mining, open pit mining, strip mining, quarrying, and dredging." § 34–32–103(9), 9 C.R.S. (1999). Second, any ambigu-

ity in the meaning of "open mining" is clarified by its use in the summary: "[T]his measure enacts an amendment to the Colorado Constitution prohibiting open mining, including open-cut and open-pit mining...." Accordingly, we find that the term "open mining" does not render the titles misleading to voters.

## C.

The caption to Initiative No. 215 is "Proposed Initiative 1999–2000 # 215." A footnote after the caption states: "Prohibiting Certain Open Pit Mining." The Objectors argue that the term "open pit mining" in the footnote is misleading. We disagree.

At the March 1, 2000 hearing and again in briefs to this court, the Proponents and Title Board have indicated that the footnote to the caption is not intended to be part of the titles or summary. Rather, the footnote was inserted merely for internal tracking purposes.

■■ We previously have recognized that the text of a caption may render the titles to a proposed initiative misleading. *See Flowing Water*, 910 P.2d at 21. In this case, however, we understand that the footnote will not appear as part of the official titles and summary. Accordingly we need not address whether the inclusion of the footnote that appears in the Title Board's draft copies of Initiative No. 215 would render the titles misleading to voters.

## D.

■ The Objectors contend that the term "cyanide" as it appears in the titles is both misleading and unfairly prejudicial. According to the Objectors, the titles improperly focus on the term "cyanide," which could mislead voters to believe that Initiative No. 215 would prohibit any use of cyanide in mining. The objectors further argue that the term "cyanide" is prejudicial "because it can conjure inappropriate images of capital punishment or poisoning." The Objectors assert that the Title Board could set the titles for Initiative No. 215 without using the term "cyanide."

We find that the Title Board did not err by using the word "cyanide" in the titles. The titles state that Initiative No. 215 concerns "a prohibition of open mining for gold and silver when ore-processing methods that utilize cyanide to leach the gold and silver from ore are used." We find that the titles do not refer to *all* mines that use cyanide to leach gold and silver from ore, but only to *open* mines that use cyanide to leach gold and silver from ore. The titles accurately represent the principle of Initiative No. 215. Thus, we conclude that the term "cyanide" does not render the titles misleading.

We also disagree that the term "cyanide" is prejudicial because voters may associate it with capital punishment and poisoning. First, we find it patently unlikely that voters reading the titles will associate Initiative No. 215 with poisoning and capital punishment. Second, we are unaware of any language that would convey the same meaning as "cyanide" in terms that would not be misleading or confusing to voters.

## E.

■ The Objectors argue that the term "leach" in the titles is misleading and prejudicial. According to the Objectors, a substantial number of polled voters did not understand what "leach" meant in the context of the titles for Initiative No. 215. A small percentage of voters believed that the term "leach" concerned chemicals leaking into water, water purification systems, dangerous pollution, or blood-sucking parasites.

We conclude that the Title Board did not err in using the term "leach" in the titles for Initiative No. 215. Given the context in which the term appears, voters are not likely to understand "leach" to mean anything other than the process of separating certain minerals from ore. This meaning comports with the common dictionary definition of "leach." *See, e.g., Random House Webster's College Dictionary* 770 (1992); *Webster's Third New International Dictionary* 1282 (1986).

Because the meaning of "leach" can be ascertained from its context in the titles, we find it improbable that voters will vote for or against Initiative No. 215 because they associate it with leeches or water filtration. We

do not dispute that voters will associate Initiative No. 215 with chemicals leaking into water supplies and dangerous pollution. Indeed, the Proponents have indicated that the very purpose of Initiative No. 215 is to prevent cyanide contamination of water supplies from open mines. However, we find that the Title Board's correct use of the term "leach" is not likely to mislead voters to vote for or against the initiative.

### F.

▪ According to the Objectors, the titles are misleading because they imply that Initiative No. 215 prohibits mine owners from expanding the physical operations of existing mines, regardless of whether their present permits allow them to do so. The Objectors contend that the text of Initiative No. 215 is contrary to the language of the titles because Initiative No. 215 would prohibit only the modification of existing mining permits to allow a mine to expand its operations.

We agree that the titles are misleading in this respect. Subsection (2) of Initiative No. 215 states: "Any such mine ... operating on November 7, 2000, may continue operating under its existing permits, but the permits may not be modified to allow such operations to be expanded." Although we do not express a view on potential applications of Initiative No. 215, *see In re Title, Ballot Title and Submission Clause, and Summary for 1999–2000 No. 172, No. 173, No. 174, and No. 175,* 987 P.2d 243, 245 (Colo.1999), we note that subsection (2) of the initiative purports to prohibit only the modification of existing mining permits. Voters, however, could construe the titles as indicating that Initiative No. 215 would prohibit the expansion of mining operations under an existing, unmodified mining permit.

For the foregoing reasons, we find that the titles are misleading and inaccurate. Accordingly, we direct the Title Board to strike the clause "BUT PROHIBITING THE EXPANSION OF MINING OPERATIONS UNDER SUCH PERMITS" from the titles and replace it with the following text: "BUT PROHIBITING THE MODIFICATION OF SUCH PERMITS TO ALLOW MINING OPERATIONS TO BE EXPANDED."

### IV.

The Objectors argue that the summary to Initiative No. 215 inaccurately portrays the likely fiscal impact of the adoption of the initiative. According to the Objectors, the Title Board failed to identify the full potential fiscal impact on the Town of Victor, Colorado that would result if the passage of Initiative No. 215 forced the Cresson mine to close. The Objectors also claim that the Title Board overlooked the loss of certain tax revenues that would occur if the Cresson mine failed to obtain approval on a pending application for expansion of its operations prior to the passage of Initiative No. 215.

▪ The Title Board must prepare a fiscal impact statement to inform voters of the financial impact of a proposed initiative. *See Flowing Water,* 910 P.2d at 26. The Title Board is vested with discretion regarding the best way to describe the fiscal impact without creating prejudice for or against a proposal. *See id.* The Title Board need not explain the fiscal impact of a proposed initiative if the impact cannot be determined from materials submitted to the Title Board due to uncertainties or variables inherent in the particular issue. *See id.* If the Title Board has sufficient information to assess the fiscal impact of only certain provisions, it must provide fiscal information with regard to those provisions in isolation and should state which provisions have indeterminate fiscal impacts. *See id.*

▪ Under the circumstances in this case, the fiscal impact statement prepared by the Title Board is neither misleading nor inaccurate. The Title Board found that the Cresson mine could continue operations for an extended period of time if Initiative No. 215 passed. The ultimate closure of the Cresson mine depends on certain unascertainable variables, particularly the extent of undiscovered mineral resources in the mine and the future economic feasibility of mineral extraction. Likewise, whether the Cresson mine's application for expansion will be approved prior to the November elections is also a matter of speculation. Accordingly, the Title Board declined to consider costs

that would result from an immediate closure of the Cresson mine in calculating the financial impact of Initiative No. 215.

■ We will not require the Title Board to consider speculative costs when assessing the fiscal impact of a proposed initiative. Accordingly, we hold that the Title Board did not err in failing to consider factors cited by the Objectors in determining the fiscal impact of Initiative No. 215.

### V.

The action of the Title Board is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

### APPENDIX

### Proposed Initiative 1999–2000 # 215[1]

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE CONSTITUTION OF COLORADO CONCERNING A PROHIBITION OF OPEN MINING FOR GOLD AND SILVER WHEN ORE–PROCESSING METHODS THAT UTILIZE CYANIDE TO LEACH THE GOLD AND SILVER FROM ORE ARE USED, AND, IN CONNECTION THEREWITH, PERMITTING MINES THAT ARE OPERATING ON OR BEFORE NOVEMBER 7, 2000, TO CONTINUE OPERATING UNDER EXISTING PERMITS, BUT PROHIBITING THE EXPANSION OF MINING OPERATIONS UNDER SUCH PERMITS.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE CONSTITUTION OF COLORADO CONCERNING A PROHIBITION OF OPEN MINING FOR GOLD AND SILVER WHEN ORE–PROCESSING METHODS THAT UTILIZE CYANIDE TO LEACH THE GOLD AND SILVER FROM ORE ARE USED, AND, IN CONNECTION THEREWITH, PERMITTING MINES THAT ARE OPERATING ON OR BEFORE NOVEMBER 7, 2000, TO CONTINUE OPERATING UNDER EXISTING PERMITS, BUT PROHIBITING THE EXPANSION OF MINING OPERATIONS UNDER SUCH PERMITS?

The summary prepared by the Board is as follows:

This measure enacts an amendment to the Colorado Constitution prohibiting open mining, including open-cut and open-pit mining, for gold and silver using heap or vat leaching if the mining operation uses cyanide ore processing. In addition, the measure allows any mining operations that are operating on November 7, 2000, to continue operating under existing permits, but the measure prohibits modifying any existing permit to expand mining operations.

It is believed that the only major existing mining operation that would be affected by this measure is located near Cripple Creek, in Teller County. That mining operation could eventually shut down as a result of this measure, after deposits covered by its existing permits are exhausted. Closure of this mine could eliminate a total of 644 jobs in the area, including 288 jobs at the mine. When the mine is closed, local governments in the region would no longer collect about $1.3 million annually in revenue that is currently collected from property taxes, sales taxes, and severance taxes. In addition, state government would no longer collect about $224,000 annually in severance tax revenue and an unknown amount of other revenues from individual and corporate income taxes, and sales and use taxes, and permitting fees. The loss of jobs could result in increased cash disbursements from the State's unemployment insurance trust fund. It is estimated that the State Division of Minerals and Geology would incur approximately $8,000 in costs from implementing and administering the measure.

Hearing February 16, 2000:

Single subject approved; staff draft amended; titles and summary set.

Hearing adjourned at 3:15 p.m.

1. Prohibiting Certain Open Pit Mining

Hearing March 1, 2000:

1. Motion for rehearing submitted by proponent Colin James Henderson *granted.*

2. Motion for rehearing submitted by Stuart Sanderson and the Colorado Mining Association *granted in part* (with respect to paragraphs 4 and 6 of the motion, except for that portion of paragraph 6 that concerns litigation costs) and *denied in part* (with respect to paragraphs 3 and 5 and that portion of paragraph 6 that concerns litigation costs).

3. Motion for rehearing submitted by Ken Kluksdahl and Amy Meketi *granted in part* (to the extent that the titles were amended to address arguments that titles were inaccurate, misleading, confusing, and prejudicial) and *denied in part* (with respect to all other grounds stated in the motion).

Hearing adjourned 4:15 p.m.

The text of Initiative No. 215 is as follows:

Be it enacted by the People of the State of Colorado:

Article XVI, Colorado Constitution, is amended BY THE ADDITION OF A NEW SECTION to read:

(1) Open mining (including open-cut and open-pit mining) for gold or silver using heap or vat leaching with cyanide ore-processing reagents is prohibited.

(2) Any such mine, as described above, operating on November 7, 2000, may continue operating under its existing permits, but the permits may not be modified to allow such operations to be expanded.